# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
### EASTERN DIVISION

| | | |
|---|---|---|
| ELAINE RUTH VON BOKEL, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 4:13-CV-2517 CAS |
| | ) | |
| JOHN M. MCHUGH, Secretary, | ) | |
| Department of the Army, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM AND ORDER

This matter is before the Court on defendant John M. McHugh, Secretary, Department of the Army's ("defendant") Motion to Dismiss pro se plaintiff Elaine Ruth Von Bokel's Complaint. The Motion to Dismiss is fully briefed and ready for decision. Also pending is plaintiff's Motion for Leave to File Amended Complaint, along with a proposed amended complaint. For the following reasons, defendant's Motion to Dismiss will be granted, and plaintiff's Motion for Leave to File Amended Complaint will be denied.

This is an action under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e, et seq. Plaintiff's original Complaint is not filed on the Court's form employment discrimination complaint, but appears to be based on it. The Complaint is conclusory and contains few, if any, factual allegations. Attached to the Complaint is a seven-page single spaced "Brief to Employment Discrimination Complaint" that consists of thirty-nine numbered paragraphs. Neither the Complaint nor the attached Brief is verified or signed under penalty of perjury. Also attached to the Complaint is plaintiff's calculation of her claimed damages and a copy of the U.S. Equal Employment Opportunity Commission Office of Federal Operations' Decision in plaintiff's appeal No. 0120113658 ("EEOC Decision").

Plaintiff filed her Opposition to defendant's Motion to Dismiss, and also appeared to possibly be requesting leave of Court to file an amended complaint. The Court instructed plaintiff that if she intended to file an amended complaint, she must

> file a Motion for Leave to File an Amended Complaint and submit her proposed Amended Complaint along with the Motion for Leave. Plaintiff is advised that any amended complaint would completely replace her original complaint. As a result, all pertinent information, including exhibits, must be contained in the amended complaint. An amended complaint cannot incorporate the original complaint by reference.

Order of July 11, 2014 at 1-2 (Doc. 16).

On July 21, 2014, plaintiff filed a motion for an extension of time until September 13, 2014 to submit an amended complaint (Doc. 17). The motion was granted by Order of July 22, 2014 (Doc. 19). Plaintiff timely filed a Motion for Leave to File Amended Complaint, but did not otherwise comply with the Court's order concerning the proposed amended complaint. Plaintiff did not submit a proposed Amended Complaint, but instead submitted an eleven-page, unverified document titled "Brief to Proposed Amended Complaint" that does not bear a case caption, consists of a narrative statement with no prayer for relief, and has no exhibits. Plaintiff described her proposed amended complaint as being: "comprised of two parts. The first part is the original Complaint including the Brief that was submitted with it. The second part, which is enclosed, is a more detailed and factual Brief." Pl.'s Mot. for Leave at 1. Plaintiff has supplemented her Complaint rather than submitting a proposed amended complaint. As a result, the Court will consider defendant's Motion to Dismiss as being directed toward the original Complaint and supporting Brief, and also the Brief to Proposed Amended Complaint.

## I. Factual and Procedural Background

The following background is taken from plaintiff's original Complaint and Brief in support, the EEOC Decision in plaintiff's appeal, and the Brief to Proposed Amended Complaint filed September 12, 2014. All quoted material is taken from the Brief in support of the original Complaint, unless otherwise stated.

Plaintiff Elaine Ruth Von Bokel ("plaintiff") worked as a Purchasing Agent, GS-7, for the United States Army Human Resources Command ("HRC") from May 2003 until she resigned in May 2009. Plaintiff alleges that beginning in the summer of 2003, another individual employed by defendant, a man named W.C., approached her at the bus stop and then began "stalking" her by following her on the Metro. Plaintiff alleges she reported the alleged stalking to the Federal Bureau of Investigation in November 2003. Plaintiff also alleges she changed her commuting schedule, method of commuting, and parking location to avoid W.C., but he would change his schedule and method of commuting to match hers. In April 2004 plaintiff reported the alleged stalking to two police departments in Illinois. Later, plaintiff was informed by "the police for the Metro . . . that was not a stalking" and she accepted and respected this ruling.

Plaintiff began to attend fewer functions at the HRC because "the alleged stalking employee was also allegedly stalking [her] inside the HRC facility" and began to "prowl upon [her] residence" from 2005 until January 2007. Plaintiff "repressed the reality of the alleged stalking employee following her on the Metro and the alleged prowling" and "went about her job and the rest of her life."

In July 2006, plaintiff got a new supervisor, Mr. Meduga, who she alleges on information and belief had a "duel [sic] role." One role was as plaintiff's supervisor at the HRC, and the other role was "with law enforcement or intelligence." Plaintiff told Mr. Meduga that "a man was stalking

3

her on the Metro and prowling upon her residence." Plaintiff alleges that her "repressed memories of the alleged stalking and alleged prowling surfaced, upon the rescue of two local kidnapping victims." Plaintiff alleges she reported the alleged stalking employee to CrimeStoppers and told Mr. Meduga that W.C. was close. Mr. Meduga told her to go to the police or Federal Protective Service ("FPS"), and then suggested that she go to a chaplain or counselor with the Employee Assistance Program ("EAP").

An FPS officer interviewed plaintiff. Plaintiff went to the chaplains and EAP counselors, but they "invented new ways to threaten, silence, and ridicule" her and minimized the actions of the stalking employee and plaintiff's fears and concerns of being at the same work site as him. Plaintiff also alleges that the alleged stalking employee, W.C., was told to stay away from her and was not permitted to go on the level of the building where plaintiff's office was located. Plaintiff asked to be able to work from home or on Saturdays to avoid W.C., but these requests were denied.

Plaintiff alleges that in the summer of 2007, she went to the HRC's EEO office twice, and both times the EEO office worked with the FPS officer to investigate her claims of stalking by W.C. The alleged stalker denied the allegations and the case was closed. In January 2008, W.C. walked past plaintiff's office. Plaintiff reported the incident to Mr. Meduga. W.C. stated that he was merely walking and exercising, but W.C. was told again that he was not allowed to go to the building level where plaintiff's office was located. Plaintiff's supervisor Mr. Meduga left the HRC in the fall of 2007.

Plaintiff then filed an Informal Complaint, "since she at least would not face retaliation from the duel [sic] supervisor[.]" In the Informal Complaint, plaintiff alleged that W.C. "has access to personnel files, in his job, and that was not right to the persons to whom the alleged stalking employee [W.C.] could get information about." Plaintiff alleges that after she filed the Informal

Complaint she "was disciplined in writing, by the legal office" and the restrictions on W.C. were lifted because, according to plaintiff's then-supervisor, plaintiff was "going formal with [her] complaint."[1]  Plaintiff does not allege any other facts about the nature of the written discipline. Plaintiff does allege that she informed HRC in writing that she took a diuretic for medical purposes, but because the restrictions on W.C. had been lifted, she would "reduce her intake of the diuretic and fluids, so that she would not have go use the restroom as frequently."

Plaintiff also alleges that "[o]ne time [she] saw [W.C.] as she was walking to the bus stop to go home from work.  [W.C.] turned around and went to the security guard's shack.  However, after that, Plaintiff saw [W.C.] walking/'exercising' one time as she was leaving the EEO office, and [W.C.] did not turn around and walk in the other direction."  Brief to Proposed Amended Complaint at 6.  Plaintiff does not allege that W.C. ever spoke to her, touched her, gestured at her, spoke to anyone else about her, or took any other actions except as described herein.

Plaintiff filed a Formal Complaint dated October 10, 2008, in which she alleged that the HRC discriminated against her on the bases of race (White), sex (female), religion (Christian/Catholic), and reprisal for prior protected EEO activity when she was subjected to inappropriate behavior by supervisors and management officials after she made complaints.

The Department of Defense's Investigations and Resolutions Division conducted an investigation and in March 2009 held a Fact-Finding Conference ("FFC") on plaintiff's Formal Complaint.  Plaintiff asserts that the HRC "did not fulfill all the elements of a FFC" because there

[1]In the Brief to Proposed Amended Complaint, plaintiff alleges that it was Colonel Brian Hecht, at the time a major, who "wrote [her] up" because she was "going formal with [her] complaint."  Brief  to Proposed Amended Complaint at 3.  It is unclear whether Col. Hecht was plaintiff's supervisor at the time, and it is also unclear whether he was part of the HRC legal department.

was "no statement of what was disputed and what was not, no clarification of issues, and no gathering of additional needed evidence" but instead was an unsuccessful alternative dispute resolution. Plaintiff asserts that she learned at the FFC that her supervisor and W.C.'s supervisor had been "coordinating" attendance at events. Plaintiff also asserts that the "primary accountable witnesses did not provide a reason for their actions, and . . . [s]ometimes they simply lied."

Plaintiff alleges she had several ex parte conversations with the Administrative Law Judge ("ALJ") that "were frequently about ways that the ALJ was telling [plaintiff] to not proceed with a hearing." Plaintiff alleges that at the hearing, the ALJ told her no hearing was needed because no witnesses were being called. Plaintiff said she wanted a hearing, and alleges that after going back and forth with the ALJ on that point, the ALJ "screamed at her" and ultimately pressured plaintiff to withdraw her request for a hearing.

Plaintiff states that "the FFC events and [W.C.] being allowed to walk/'exercise' in front of plaintiff's office and being allowed to be in her presence in other ways made for a work environment that was still not being made safe for Plaintiff. Plaintiff could not remain in an unsafe work environment so she left" the HRC's employment in May 2009. Pl.'s Brief to Proposed Amended Complaint at 2. Plaintiff asserts that in addition to herself, "all employees of the [HRC], especially the female employees, were not in a safe work environment in the presence of [W.C.]" Id. at 10.

On May 27, 2011, approximately two years after plaintiff left her employment, the HRC issued a decision on her Formal Complaint, finding that no illegal discrimination had occurred. Plaintiff filed an appeal to the Equal Employment Opportunity Commission's Office of Federal Operations ("EEOC") in June 2011. The EEOC summarized the HRC's decision as follows:

> [T]he [HRC] concluded that Complainant failed to show that it had discriminated against her on the basis of race, sex, or reprisal and that [plaintiff] had failed to rebut any of management's explanations for its actions. The [HRC] also concluded that

the incidents of which [plaintiff] complained, even if true, were not sufficiently severe or pervasive to have created a hostile work environment.

The [HRC] pointed to evidence showing that [plaintiff] believed that she was being stalked years prior to revealing to management that it was an employee who was the stalker and that she also told management that the stalking had stopped. The [HRC] found that once [plaintiff] identified the alleged stalker to her supervisor, he immediately notified the Federal Protective Service (FPS) and the alleged stalker was directed to avoid any contact with [plaintiff]. The [HRC] also determined that an investigation was conducted by FPS which concluded that the stalking allegation was unfounded.

EEOC Decision at 2 (Ex. 1 to Complaint).

Plaintiff tried but was unable to find an attorney to represent her before the EEOC. In its Decision dated September 19, 2013, the EEOC affirmed the HRC's conclusion that no discrimination had occurred against plaintiff. With respect to plaintiff's allegations concerning the ALJ's conduct, the EEOC found that "other than [plaintiff's] unsworn and unsupported assertions about inappropriate conduct, . . . the record is devoid of any evidence, competent or persuasive, that would support the allegations or assertions of misconduct." Id. at 4.

As to the claim of a hostile work environment, the EEOC found:

Upon review, we find no reason to disturb the [HRC's] finding that it had not discriminated against [plaintiff] by subjecting her to a hostile work environment or that a hostile work environment existed in the workplace. [Plaintiff] also has not shown that others not in her protected groups were treated more favorably than she was. Regarding the issue of stalking, [plaintiff] has not proven by the evidence that she was in fact ever stalked by the alleged stalker in the workplace. Neither is there evidence that she was stalked by the employee outside of the workplace such that his presence in the workplace created a discriminatorily hostile work environment for her.

EEOC Decision at 4-5.

The EEOC also rejected plaintiff's allegations that the EAP Counselor discriminated against her by asking her to sign various forms as releases, id. at 5, and that plaintiff's supervisor, the EAP and the chaplains worked against plaintiff to create a hostile environment. Id. at 5-6. The EEOC

noted that while plaintiff identified religion as a basis for discrimination in her complaint, the HRC did not address religion in its decision but did address religion as a basis in its response to plaintiff's EEOC appeal. Plaintiff, however, did not address religion in her brief on appeal. The EEOC concluded, "Beyond mere and unclear allegations, [plaintiff] has not shown that the [HRC] discriminated against her because of her religion" or treated her differently because of her religion. Id. at 6.

The EEOC Decision affirmed the HRC's finding of no discrimination. Plaintiff timely filed the instant lawsuit on December 18, 2013.

## II. Legal Standard

On a motion to dismiss, the Court accepts as true the factual allegations contained in the complaint and grants the plaintiff the benefit of all reasonable inferences that can be drawn from those allegations. See Lustgraaf v. Behrens, 619 F.3d 867, 872-73 (8th Cir. 2010). A pro se plaintiff's allegations must be construed liberally. Burke v. North Dakota Dep't of Corr. & Rehab., 294 F.3d 1043, 1043-44 (8th Cir. 2002) (citations omitted). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. "The plausibility standard . . . asks for more than a sheer possibility that a defendant has acted unlawfully." Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 556).

"Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'" Id. (quoting Twombly, 550 U.S. at 557). This standard reflects "two working principles." Id. "First, the tenet

that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." Id. "Second, only a complaint that states a plausible claim for relief survives a motion to dismiss." Id. at 1950. This is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id.

An employment discrimination complaint does not need to contain specific facts establishing a prima facie case to survive a motion to dismiss for failure to state a claim. See Swierkiewicz v. Sorema, 534 U.S. 506, 510-12 (2002). The elements of a prima facie case are relevant to a plausibility determination, however. See Rodriguez-Reyes v. Molina-Rodriguez, 711 F.3d 49, 54 (1st Cir. 2013) (elements of a prima facie case are "part of the background against which a plausibility determination should be made" and "may be used as a prism to shed light upon the plausibility of the claim"); see also Khalik v. United Air Lines, 671 F.3d 1188, 1191 (10th Cir. 2012) ("While the 12(b)(6) standard does not require that Plaintiff establish a prima facie case in her complaint, the elements of each alleged cause of action help to determine whether Plaintiff has set forth a plausible claim.").

The Eighth Circuit has stated that to survive a motion to dismiss, "a civil rights complaint must contain facts which state a claim as a matter of law and must not be conclusory." Gregory v. Dillards, Inc., 565 F.3d 464, 473 (8th Cir. 2009) (en banc) (quotation marks and citation omitted).

> [A] plaintiff must assert facts that affirmatively and plausibly suggest that the pleader has the right he claims rather than facts that are merely consistent with such a right. While a plaintiff need not set forth detailed factual allegations or specific facts that describe the evidence to be presented, the complaint must include sufficient factual allegations to provide the grounds on which the claim rests. A district court, therefore, is not required to divine the litigant's intent and create claims that are not clearly raised, and it need not conjure up unpled allegations to save a complaint.

Id. (quotation marks and internal citations omitted).

Ordinarily, only the facts alleged in the complaint are considered in ruling on a 12(b)(6) motion, but materials attached to the complaint as exhibits may be considered in construing the sufficiency of the complaint. Morton v. Becker, 793 F.2d 185, 187 (8th Cir. 1986). Materials attached to complaint are part of it for all purposes, and may be considered in ruling on a Rule 12(b)(6) motion. Quinn v. Ocwen Fed. Bank FSB, 470 F.3d 1240, 1244 (8th Cir. 2006) (per curiam). The Court therefore considers the attachments to plaintiff's original Complaint as well as the Brief to Proposed Amended Complaint in resolving the Motion to Dismiss.

## III. Discussion

### A. *Plaintiff Fails to State a Claim for Race, Sex or Religious Discrimination*

Section 717 of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e-16, prohibits discrimination in the federal sector on the basis of race, color, religion, sex and national origin. 42 U.S.C. § 2000e-16(a). To establish a prima facie case of race or sex discrimination, plaintiff must show that (1) she is a member of a protected class, (2) she was meeting her employer's legitimate job expectations, (3) she suffered an adverse employment action, and (4) the circumstances give rise to an inference of discrimination (for example, that similarly situated employees outside the protected class were treated differently). See Fiero v. CSG Sys., Inc., 759 F.3d 874, 878 (8th Cir. 2014) (sex discrimination); Gibson v. American Greetings Corp., 670 F.3d 844, 853-54 (8th Cir. 2012) (race discrimination). To establish a prima facie case of religious discrimination, plaintiff must show that she (1) has a bona fide religious belief that conflicts with an employment requirement, (2) informed the employer of such conflict, and (3) suffered an adverse employment action. E.E.O.C. v. Kelly Servs., Inc., 598 F.3d 1022, 1030 (8th Cir. 2010). As stated above, however, it is not necessary for an employment discrimination plaintiff to plead the elements of the prima facie case to withstand a motion to dismiss for failure to state a claim.

Here, plaintiff's Complaint and two lengthy supporting Briefs allege many facts, but they do not contain facts which state a claim as a matter of law. See Gregory, 565 F.3d at 473. Taking the facts in the light most favorable to plaintiff, she does not assert any facts that affirmatively and plausibly suggest her former employer discriminated against her on the basis of her race, sex, or religion. Plaintiff's Complaint and Briefs offer bare legal conclusions of discrimination that are devoid of any factual allegations that support them. Plaintiff does not allege facts showing she is a member of a protected class,[2] that she was meeting her employer's expectations, or that she suffered an adverse employment action.

Further, none of plaintiff's factual allegations give rise to an inference of discrimination. Plaintiff claims that a coworker began stalking her in 2003, but she did not tell the HRC until several years later.[3] Once she did, the HRC had the allegations investigated by the Federal Protective Service. Despite the fact that FPS concluded the allegations were unfounded, the HRC required the alleged stalker to stay away from plaintiff and directed him not go on the same level of the building as plaintiff's office. In addition, plaintiff does not allege that either the alleged stalking or management's actions taken to address her allegations of stalking were based on a discriminatory motive of any sort. Similarly, plaintiff's allegations that the EEO process was unfair do not include any facts tending to show that any actions she complains of were based on a discriminatory motive.

---

[2]The Court takes judicial notice, however, that plaintiff is female, which places her in a protected class.

[3]Plaintiff's use of the word "stalking" is questionable, as C.W.'s alleged conduct, even if every favorable inference is given to plaintiff, does not measure up to any reasonable definition of the term. Compare, e.g., 22 U.S.C. § 2507a(f)(4); 42 U.S.C. § 13925(a)(30); Mo. Rev. Stat. § 565.225.2 (2000).

Further, plaintiff's allegations that because of the stalking she stopped attending HRC functions, had to drive to work instead of taking the bus, and started drinking less fluids so she would not have to leave her office to go to the bathroom, do not allege adverse action. These are actions plaintiff unilaterally chose to take based on her perception that she was being stalked, rather than being imposed upon her by the HRC for discriminatory reasons. Further, they do not rise to the level of a material employment disadvantage. See Kerns v. Capital Graphics, Inc., 178 F.3d 1011, 1016-17 (8th Cir. 1999) ("Termination, cuts in pay or benefits, and changes that affect an employee's future career prospects are significant enough to meet the standard, as would circumstances amounting to a constructive discharge. Minor changes in duties or working conditions that cause no materially significant disadvantage do not meet the standard of an adverse employment action, however.") (internal citations omitted). Finally, plaintiff's allegation that she quit her job because she "could not remain in an unsafe work environment" does not allege discriminatory treatment by the HRC.

Plaintiff admits in her Opposition to defendant's Motion to Dismiss that she fails to plead the elements of a cause of action for employment discrimination (Doc. 21 at 5), but states, "In this Pleading, and later in the Amended Complaint, Plaintiff now pleads that (1) she is a member of a protected class, with respect to race and gender, (2) she was meeting the [HRC's] legitimate job expectations, (3) she suffered adverse employment actions, and (4) similarly situated employees outside the protected class were treated differently." Id. at 6.

These allegations fail to state a claim of employment discrimination for two reasons. First, a plaintiff cannot add factual allegations to a complaint by raising them in a memorandum in opposition to a motion to dismiss. Morgan Distrib. Co., Inc. v. Unidynamic Corp., 868 F.2d 992, 995 (8th Cir. 1989) ("[I]t is axiomatic that a complaint may not be amended by the briefs in

opposition to a motion to dismiss. To hold otherwise would mean that a party could unilaterally amend a complaint at will, even without filing an amendment, . . . simply by raising a point in a brief.") (quotation marks and internal citations omitted). Second, plaintiff's additional allegations are not factual allegations but rather are "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements." See Iqbal, 556 U.S. at 678. Although legal conclusions can provide the framework for a complaint, they must be supported by factual allegations. Id. Here, plaintiff's legal conclusions are not supported by factual allegations.

Based on the foregoing, the Court concludes that plaintiff fails to state a claim of race, sex, or religious discrimination.

### B. *Plaintiff Fails to State a Claim of Hostile Work Environment*

Defendant also moves to dismiss plaintiff's Complaint to the extent she has asserted a claim for hostile work environment. To establish a claim of hostile work environment, whether based on race or sex, plaintiff must show that (1) she belongs to a protected group, (2) she was subjected to unwelcome harassment based on her race or sex, (3) the harassment affected a term, condition, or privilege of her employment; (4) her employer knew or should have known of the harassment; and (5) the employer failed to take proper action. See Rickard v. Swedish Match N. America, Inc., 773 F.3d 181, 184-85 (8th Cir. 2014).

Defendant states that plaintiff merely makes the bare allegation of "harassment in the form of a hostile work environment, job favoritism, constructive discharge, and disparate impact." Complaint at 3. Defendant asserts that to the extent plaintiff intends to assert a claim based on hostile work environment, she has not articulated facts to show that any unwelcome harassment was

based on her race or sex.[4]  Instead, plaintiff merely alleges that a co-worker allegedly "stalked" her as set forth above.  Defendant also asserts that plaintiff fails to allege conduct severe enough to be actionable under Title VII.

The Court agrees.  There is nothing in plaintiff's Complaint or Briefs in support to suggest that C.W.'s alleged harassment of plaintiff was based on her sex or race, or membership in any other protected group.  Whether harassing conduct constitutes discrimination based on sex is determined by whether the harasser's actions were motivated either by sexual desire, special attention paid to plaintiff as a female, or that the harasser treated males and females differently in a mixed-gender environment.  See Oncale v. Sundowner Offshore Servs., Inc., 523 U.S. 75, 80-81 (1998).  Similarly, for harassing conduct to constitute race discrimination, it must be determined that the harasser's actions were taken based on the plaintiff's race.  See Singletary v. Missouri Dep't of Corr., 423 F.3d 886, 892 (8th Cir. 2005).  "A hostile work environment exists when the workplace is dominated by racial slurs, but not when the offensive conduct consists of offhand comments and isolated incidents."  Clay v. Credit Bureau Enters., Inc., 754 F.3d 535, 540 (8th Cir. 2014) (quoted case omitted).

Plaintiff does not allege any facts in her Complaint or Briefs to indicate that C.W.'s actions were based on either her sex or her race.  There is also nothing in the EEOC Decision attached to the Complaint to indicate plaintiff's claims were based on her status as a member of protected

---

[4]Plaintiff admits in her Opposition to defendant's Motion to Dismiss that her Complaint is "deficient in any claim of a hostile work environment," Doc. 21 at 6, but asserts, "In this Pleading and as an Amended Complaint, Plaintiff now pleads that (1) she is a member of a protected class, (2) she was subjected to unwelcome harassment, (3) the harassment was based on her race and gender, and (4) the harassment affected a term, condition, or privilege of employment."  Id. at 7 (emphasis added).  As discussed above, plaintiff cannot amend her pleading by means of an opposition brief, and plaintiff's purported "pleading" merely consists of threadbare recitals of the elements of the cause of action.

groups. Title VII only prohibits workplace harassment when it is based on a prohibited factor. See Palesch v. Missouri Comm'n on Human Rights, 233 F.3d 560, 566 (8th Cir. 2000); McCown v. St. John's Health Sys., 349 F.3d 540, 543 (8th Cir. 2003). The "required causal nexus between the complained of harassment and the protected status of [plaintiff] (gender and race) is conspicuously absent in this case." Palesch, 233 F.3d at 566.

Further, the conduct allegedly creating a hostile work environment must be both objectively and subjectively abusive. Faragher v. City of Boca Raton, 524 U.S. 775, 787 (1998). Title VII forbids "only behavior so objectively offensive as to alter the 'conditions' of the victim's employment." Oncale, 523 U.S. at 81; Faragher, 524 U.S. at 786. "To be actionable, harassment must be both objectively and subjectively offensive, such that a reasonable person would consider it to be hostile or abusive, and courts make this determination 'by looking at all the circumstances, including the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'" Breeding v. Arthur J. Gallagher and Co., 164 F.3d 1151, 1158 (8th Cir. 1999) (quoting Faragher, 524 U.S. at 787-88), abrogated in part on other grounds by Torgerson v. City of Rochester, 643 F.3d 1031 (8th Cir. 2011).

Taking the facts in the light most favorable to plaintiff, the Court concludes she does not allege facts showing the alleged harassment "affected a term, condition, or privilege of her employment." Plaintiff alleges only that the alleged stalker, C.W., once approached her at a bus stop, appeared to change his modes of transportation to work to match those used by plaintiff, she saw him on the parking lot sometimes, she twice saw him somewhere at the HRC, and he once walked past her office when he was not supposed to be present on her floor. This conduct took place over a span of years. Plaintiff does not allege that C.W. ever spoke to her, touched her, threatened

her, gestured at her, or otherwise interacted with her. The Court finds as a matter of law that a reasonable person would not consider this conduct to be hostile or abusive such that it could state a claim under Title VII. "Title VII . . . does not set forth a general civility code for the American workplace." Carpenter v. Con–Way Cent. Express, Inc., 481 F.3d 611, 619 (8th Cir. 2007) (internal quotation marks omitted). Nor is Title VII "a 'bad acts' statute." Evans v. Kansas City, Mo. Sch. Dist., 65 F.3d 98, 101 (8th Cir. 1995) (citation omitted).

In addition, plaintiff alleges that she did not inform the HRC of the alleged stalking until it been going on for several years. When plaintiff did inform the HRC, she alleges that the HRC had the Federal Protective Service investigate her allegations. Plaintiff also alleges that although the FPS concluded her allegations were unfounded, the HRC imposed restrictions on the alleged stalker. Plaintiff therefore affirmatively pleads facts which tend to show she cannot establish that HRC knew or should have known of the harassment but failed to take proper action

To the extent plaintiff's Complaint attempts to assert a claim for hostile work environment, it should be dismissed for failure to state a claim upon which relief can be granted.

### C. *Plaintiff Fails to State a Claim for Retaliation Discrimination*

Defendant also moves to dismiss plaintiff's claim for retaliation discrimination. "To establish a retaliation claim under Title VII, an employee must show that he engaged in statutorily protected conduct, that he suffered an adverse employment action, and that the protected conduct was a but-for cause of the adverse action." Bennett v. Riceland Foods, Inc., 721 F.3d 546, 551 (8th Cir. 2013) (citing University of Tex. Sw. Med. Ctr. v. Nassar, 133 S. Ct. 2517, 2534-35 (2013)).

Defendant argues that plaintiff alleges only, "The HRC violated civil rights laws pertaining to the [plaintiff] in ways that related directly to the stalking employee's actions and in ways not directly related to the alleged stalking employee's actions, mainly in the form of retaliatory

harassment." Brief to Original Complaint at 3. Defendant also argues that plaintiff cannot satisfy the second element because she does not claim that she was subjected to any adverse employment action.

The Court has carefully read the Complaint, the Brief in Support, and the Brief to Proposed Amended Complaint. Viewing the facts in the light most favorable to plaintiff, plaintiff alleges that after she filed an Informal Complaint concerning the alleged stalker, in which she complained that W.C. "has access to personnel files, in his job, and that was not right to the persons to whom the alleged stalking employee could get information about," she was "disciplined in writing, by the legal office." Brief in Support at 5, ¶¶ 26-27. Plaintiff also alleges that "Colonel Brian Hecht wrote up Plaintiff since, according to him, she was 'going formal with [her] complaint.'" Brief to Proposed Amended Complaint at 3. Plaintiff does not allege what the contents of the written discipline were, or that she suffered any adverse consequences from the written discipline.

"A retaliation claim requires that the plaintiff have engaged in protected conduct, or, as the Civil Rights Act of 1964 states, 'oppos[ing] any practice made an unlawful employment practice by this title.' 42 U.S.C. § 2000e–3(a). An 'unlawful employment practice' is discrimination on account of 'race, color, religion, sex, or national origin.' Id. § 2000e–2(a)." Smith v. International Paper Co., 523 F.3d 845, 849-50 (8th Cir. 2008). "Conduct is not actionable under Title VII if no reasonable person could have believed the incident violated Title VII's standard." Id. (quoting Barker v. Missouri Dep't of Corr., 513 F.3d 831, 835 (8th Cir. 2008)).

To be protected from retaliation for making a complaint, a plaintiff need not establish that the conduct she opposed was in fact prohibited under Title VII. See Wallace v. Sparks Health Sys., 415 F.3d 853, 858 (8th Cir. 2005); Brannum v. Missouri Dep't of Corr., 518 F.3d 542, 547 (8th Cir. 2008). But the underlying claim must be one of discrimination. To provide a basis for a sexual or

racial harassment retaliation claim, the underlying complaint must have concerned conduct that a reasonable person would have believed was a violation of Title VII. Smith, 523 F.3d at 849; see also Curd v. Hank's Discount Fine Furniture, Inc., 272 F.3d 1039, 1041-42 (8th Cir. 2001); Brannum, 518 F.3d at 547.

As set forth above, while plaintiff eventually complained to her supervisors about C.W.'s alleged stalking, there is nothing in the Complaint or Briefs in support to suggest that she complained she was being stalked because of her sex or race. Plaintiff states that her Informal Complaint alleged W.C. "has access to personnel files, in his job, and that was not right to the persons to whom the alleged stalking employee [W.C.] could get information about." This allegation is unrelated to sex, race or other protected category, and therefore is not an assertion of conduct that a reasonable person would have believed to be a violation of Title VII.[5] Plaintiff does not allege that her Informal Complaint claimed that race or sex discrimination, or any other form of discrimination prohibited by Title VII, was at issue. Further, for the reasons explained above, a reasonable person would not have concluded that W.C.'s alleged conduct was based on race or sex, or was sufficiently severe and pervasive, so as to violate Title VII. As a result, plaintiff's Informal Complaint was not protected by Title VII because it did not involve a practice made unlawful by Title VII. See Guimaraes v. SuperValu, Inc., 674 F.3d 962, 978-79 (8th Cir. 2012) ("For a report of discrimination to be statutorily protected activity under Title VII, it must include a complaint of

_____

[5]Plaintiff's failure to expressly complain about race or sex discrimination in the Informal Complaint also severs any potential causal link for her retaliation claim. An employee must show that the employer had actual or constructive knowledge of protected activity to establish unlawful retaliation. Hervey v. County of Koochiching, 527 F.3d 711, 722 (8th Cir. 2008). Because plaintiff's Informal Complaint alleging that W.C. "has access to personnel files" did not implicate Title VII, it did not provide the HRC with actual or constructive knowledge of any protected activity by plaintiff. See id. at 722-23.

national-origin discrimination or sufficient facts to raise that inference."); Helton v. Southland Racing Corp., 600 F.3d 954, 961 (8th Cir. 2010) ("Because [plaintiff] acknowledged that she said nothing in that call about race discrimination, her conversation was not protected conduct under Title VII, and so any action taken in response to that conversation cannot be actionable under Title VII."); Smith, 523 F.3d at 849-50; Brannum, 518 F.3d at 548; Curd, 272 F.3d at 1041-42.

Finally, plaintiff fails to plead any facts sufficient to establish that a reasonable employee would be dissuaded from making or supporting a charge of discrimination after being disciplined in writing, without more. In Burlington Northern & Santa Fe Railway Co. v. White, 548 U.S. 53 (2006), the Supreme Court held that "retaliation claims under Title VII could be based on a hostile work environment and need not be based solely on discrete adverse employment actions that affect the terms or conditions of employment." Stewart v. Independent Sch. Dist. No. 196, 481 F.3d 1034, 1042 (8th Cir. 2007). "The Court held that actions are considered materially adverse and are actionable in Title VII retaliation claims if the actions 'well might have dissuaded a reasonable worker from making or supporting a charge of discrimination.'" Id. (quoting Burlington N., 548 U.S. at 68).

A plaintiff "must prove that a reasonable person would perceive as retaliatory the actions she finds offensive." Sutherland v. Missouri Dep't of Corr., 580 F.3d 748, 752 (8th Cir. 2009). "The Supreme Court has stated that an employee is not protected 'from all retaliation, but from retaliation that produces an injury or harm.'" Id. (quoting Burlington Northern, 548 U.S. at 67). The Eighth Circuit's "post-Burlington Northern decisions have consistently held that, to be materially adverse, retaliation cannot be trivial; it must produce some 'injury or harm.'" Littleton v. Pilot Travel Ctrs., LLC, 568 F.3d 641, 644 (8th Cir. 2009) (quoting Gilbert v. Des Moines Area Cmty. Coll., 495 F.3d 906, 917 (8th Cir. 2007)). The Eighth Circuit has "concluded that commencing performance

evaluations, or sending a critical letter that threatened 'appropriate disciplinary action,' or falsely reporting poor performance, or 'lack of mentoring and supervision' were actions that did not establish a prima facie case of retaliation, absent showings of materially adverse consequences to the employee." Littleton, 568 F.3d at 644 (citing cases). "Importantly, [the Eighth Circuit has] also determined that a supervisor's warnings that did not threaten termination or any other employment-related harm' do not constitute material adverse employment action." AuBuchon v. Geithner, 743 F.3d 638, 644 (8th Cir. 2014) (quotation marks and quoted case omitted).

Here, the Court has concluded plaintiff has not alleged the existence of a hostile work environment. It further concludes plaintiff does not allege that the "written discipline" issued to her caused any sort of injury or harm, much less that it "well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." Burlington N., 548 U.S. at 68.

For these reasons, defendant's motion to dismiss plaintiff's Title VII retaliation claim should be granted.

D. *Plaintiff's Other Allegations are Not Administratively Exhausted*

Defendant moves to dismiss plaintiff's Title VII claims based on color, national origin, "job favoritism," and constructive discharge for failure to exhaust administrative remedies. "Federal employees asserting Title VII claims must exhaust their administrative remedies as a precondition to filing a civil action in federal district court." McAdams v. Reno, 64 F.3d 1137, 1141 (8th Cir. 1995) (citing Brown v. General Services Admin., 425 U.S. 820, 835 (1976)). Failure to exhaust administrative remedies bars a plaintiff from raising the Title VII claims in federal court. Brown, 425 U.S. at 832; Briley v. Carlin, 172 F.3d 567, 571 (8th Cir. 1999).

Plaintiff claimed discrimination only on the basis of race, sex, religion and retaliation at the administrative level. Accordingly, plaintiff's claims based on color, national origin, "job favoritism,"[6] and constructive discharge are not exhausted and must be dismissed without prejudice.

Plaintiff asserts that her constructive discharge claim was exhausted at the administrative level. This assertion is not supported by plaintiff's pleadings, in particular the EEOC Decision attached to the Complaint, which states that plaintiff "no longer works for the [HRC]," but does not mention a claim of constructive discharge. Even if the constructive discharge claim were administratively exhausted, plaintiff's allegations fail to state a claim upon which relief can be granted. "To establish a case of constructive discharge, [plaintiff] must show that '(1) a reasonable person in her situation would find the working conditions intolerable, and (2) the employer intended to force her to quit.'" Rester v. Stephens Media, LLC, 739 F.3d 1127, 1132 (8th Cir. 2014) (quoted case omitted). The Eighth Circuit has "observed that plaintiffs have a higher evidentiary burden to prove a constructive discharge than an adverse employment action." AuBuchon, 743 F.3d at 645 (citing cases). Because the Court concludes that plaintiff has failed to allege material adverse employment actions based on the same incidents she alleges constitute a constructive discharge, she necessarily fails to allege constructive discharge. See AuBuchon, id.

E. *Plaintiff's Proposed Amended Complaint Fails to Remedy the Defects of the Original Complaint, and Amendment Would be Futile*

---

[6]Plaintiff's claim of "job favoritism" does not concern herself but rather is based on favoritism allegedly shown to one of her supervisors, Mr. Meduga, for "two positions he was given," Complaint at 1, that he "did not have to compete for and qualify for . . . like other persons have to." Brief to Proposed Amended Complaint at 3. Plaintiff does not allege that a discriminatory motive was behind the alleged favoritism or that she suffered any harm as a result of it. These allegations do not state a claim for relief under Title VII.

Also pending before the Court is plaintiff's Motion for Leave to File Amended Complaint, attached to which is plaintiff's eleven-page narrative statement titled "Brief to Proposed Amended Complaint." The Court has construed this document as a supplement to plaintiff's Complaint instead of a proposed amended complaint, because of the deficiencies in it discussed *supra* at 2.

Although leave to amend is to be freely granted under Federal Rule of Civil Procedure 15(a), the Court has discretion whether or not to grant leave to amend. Zenith Radio Corp. v. Hazeltine Research, Inc., 401 U.S. 321, 330-32 (1971). Factors to consider in determining whether leave to amend should be granted include but are not limited to (1) whether the motion was filed in bad faith or with dilatory motive; (2) whether the motion was filed with undue delay; (3) whether leave to amend would be unduly prejudicial to the opposing parties; and (4) whether the proposed amendment would be futile. See Bell v. Allstate Life Ins. Co., 160 F.3d 452, 454 (8th Cir. 1998) (citing Foman v. Davis, 371 U.S. 178, 182 (1962)).

It is appropriate to deny leave to amend where the filing of the amended complaint would be futile. Humphreys v. Roche Biomedical Labs., Inc., 990 F.2d 1078, 1082 (8th Cir. 1993); Harbor Ins. Co. v. Essman, 918 F.2d 734, 739 (8th Cir. 1990). "Generally, parties should not be allowed to amend their complaint without showing how the complaint could be amended to save the meritless claim." Hintz v. JPMorgan Chase Bank, N.A., 686 F.3d 505, 511 (8th Cir. 2012) (quotation marks and quoted case omitted). Putting aside the technical defects in plaintiff's Brief to Proposed Amended Complaint, the Court has construed it together with plaintiff's original Complaint and Brief in Support and concluded that the Complaint, taken as a whole, does not withstand a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure. Plaintiff's proffered "amendment" does not cure but rather perpetuates the defects of the original Complaint, and the Court has no reason to believe plaintiff could remedy those defects through

further pleading attempts.  As a result, plaintiff's motion for leave to file an amended complaint will be denied.

## IV.  Conclusion

For the foregoing reasons, the Court finds that defendant's Motion to Dismiss should be granted with respect to plaintiff's Title VII claims based on race, sex, religion and retaliation, as plaintiff's Complaint fails to state a claim upon which relief can be granted, and on plaintiff's Title VII claims based on color, national origin, "job favoritism" and constructive discharge for failure to exhaust administrative remedies.  Plaintiff's Motion for Leave to Amend Complaint should be denied as the proposed amended complaint fails to remedy the defects in the original Complaint and therefore the proposed amendment is futile.

Accordingly,

**IT IS HEREBY ORDERED** that defendant John McHugh, Secretary, Department of the Army's Motion to Dismiss is **GRANTED**.  [Doc. 14]

**IT IS FURTHER ORDERED** that plaintiff's Motion for Leave to File Amended Complaint is **DENIED**.  [Doc. 25]

An appropriate order of dismissal will accompany this Memorandum and Order.

**CHARLES A. SHAW**
**UNITED STATES DISTRICT JUDGE**

Dated this  _27th_  day of January, 2015.